profits he derives from the condemned property.

### *CONCLUSION*

By signing the subject lease agreement, Lessee assigned his share of the damages paid into the court's registry by the Government of the Virgin Islands for the taking of his leasehold interest to Lessors. Furthermore, Lessee is not entitled to a share of these damages for loss of business because his profits have not been taken. Lessee is entitled to no share of the monies deposited into the court's registry; therefore, Lessors are entitled to judgment as a matter of law.

Karen CARLSON, M.D., Plaintiff,

v.

UNITED STATES DEPT. OF HEALTH AND HUMAN SERVICES, et al., Defendants.

Civ. No. AW–94–1828.

United States District Court, D. Maryland.

March 17, 1995.

Michael Martinez, William J. Dempster, Holland & Knight, Ann Marcia Garfinkle, Garfinkle, Liotta & Dranitzke, Washington, DC, for plaintiff.

Virginia Evans, Baltimore, MD, for defendants.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

This case arises from the Plaintiff's allegations of sexual harassment and discrimination. Presently before the Court is the Defendants' Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6). No hearing is deemed necessary. Local Rule 105.6 (D.Md. 1994). For the reasons stated below, the Court will allow the Plaintiff to proceed with her claim under 42 U.S.C. § 2000e *et seq.* ("Title VII") but will dismiss the remainder of her First Amended Complaint ("Complaint").

### Background

Karen Carlson, a physician, is a former officer in the Commissioned Corp of the United States Public Health Service ("PHS").[1] She alleges that from 1989 to 1991, Mr. Philip Killam, her supervisor, sexually harassed her. She contends that he made numerous inappropriate sexual remarks and propositions to her. She further alleges that in October of 1991, because she refused his advances, he lowered the ratings of two elements of her annual evaluation report.

Dr. Carlson then filed a complaint with the agency's Equal Employment Opportunity ("EEO") office. She contends that the Defendants responded, in part, by assigning her to positions of lesser stature. The agency eventually determined that there had been no sexual harassment. She found her working conditions intolerable and resigned on January 6, 1994.

Dr. Carlson commenced this case by filing her three count Complaint. She asserts claims under the Fifth Amendment (Count I), the Administrative Procedure Act

---

1. The PHS is an agency of the Department of Health and Human Services ("Department of HHS"). 42 U.S.C. § 202.

("APA") (Count II), and Title VII (Count III).

The Defendants have now moved to dismiss. They argue that officers of the PHS may not sue under Title VII or the APA. They also contend that this Court lacks jurisdiction to hear her constitutional claim as there has been no waiver of sovereign immunity.

In assessing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court accepts all well-pleaded facts as true. *Miree v. DeKalb County*, 433 U.S. 25, 27, 97 S.Ct. 2490, 2492, 53 L.Ed.2d 557 (1977). Dismissal is only appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–03, 2 L.Ed.2d 80 (1957) (citations omitted). Applying this standard, the Court will not dismiss the Plaintiff's Title VII claim, but it will dismiss the remaining counts of her Complaint.

## *Discussion*

### A. *Title VII*

Generally, federal employees are protected by Title VII. Section 717(a) of Title VII extends the statute to federal employees including "employees in the military departments ... [and] executive agencies ..." 42 U.S.C. § 2000e–16(a). However, under the well-established "military exception," uniformed military personnel may not maintain actions under Title VII. *Johnson v. Alexander*, 572 F.2d 1219 (8th Cir.), *cert. denied*, 439 U.S. 986, 99 S.Ct. 579, 58 L.Ed.2d 658 (1978).[2] The principle issue in this case is whether this exception applies to commissioned officers of the PHS.

The two circuit courts to consider this issue have reached different conclusions. The Tenth Circuit has found that the exception applies to officers of the PHS. *Salazar v. Heckler*, 787 F.2d 527 (10th Cir.1986). On the other hand, the District of Columbia Circuit has found that it does not. *Milbert v. Koop*, 830 F.2d 354 (D.C.Cir.1987) (Frank A. Kaufman, J., sitting by the designation).[3] Obviously, the Defendants argue that the Court should follow *Salazar* while the Plaintiff urges the Court to follow *Milbert*.[4] As explained below, in light of the reasons for the military exception, the Court finds Judge Kaufman's opinion in *Milbert* persuasive.

The "military exception" was first recognized in *Johnson*. In that case, the Army denied plaintiff's application for enlistment, and he brought suit under Title VII alleging racial discrimination. *Johnson*, 572 F.2d at 1220–21. Title VII does not define "employee or applicants for employment" so the court considered the ordinary meaning of the terms. *Id.* at 1223–24. That, of course, is the accepted method of statutory interpretation. *See, e.g., F.D.I.C. v. Meyer*, —— U.S. ——, ——, 114 S.Ct. 996, 1001, 127 L.Ed.2d 308 (1994) (citations omitted). Because of the inherent differences between ordinary civilian employment and the military service (e.g., uniformed military personnel may not quit nor be fired, and they are subject to military law and discipline), the court found that uniformed military personnel were not "employees." *Johnson*, 572 F.2d at 1223–24. Therefore, the court held that Title VII did not apply to the plaintiff.

The other circuits to consider the issue have generally relied on the reasoning in *Johnson*. *See, e.g., Roper*, 832 F.2d at 248 ("The relationship between the government and a uniformed member of the military

---

**2.** Each of the circuits to consider this issue has followed the holding of *Johnson*. *See Gonzalez v. Dept. of Army*, 718 F.2d 926 (9th Cir.1983); *Salazar v. Heckler*, 787 F.2d 527 (10th Cir.1986); *Roper v. Dept. of Army*, 832 F.2d 247, 248 (2d Cir.1987); *Stinson v. Hornsby*, 821 F.2d 1537 (11th Cir.1987), *cert. denied*, 488 U.S. 959, 109 S.Ct. 402, 102 L.Ed.2d 390 (1988).

**3.** The Defendants provided the Court with a copy a recent decision of the U.S. District Court for the Southern District of Florida following *Salazar*. *Canino v. Lee*, No. 94–1512 (S.D.Fla. March

2, 1995). There is very little discussion in that opinion, and the Court is not aware of any other cases regarding this issue.

**4.** The Court notes that the Plaintiff, obviously with *Milbert* in mind, originally filed her Complaint in the United States District Court for the District of Columbia. The Defendants responded by moving to transfer. Judge Harold Green transferred the case to this Court by an order entered on May 13, 1994.

remains unlike the relationship which exists between civilian employer and employee."); *Stinson,* 821 F.2d at 1539–40 (noting differences between service in the National Guard and civilian employment). *See also Taylor v. Jones,* 653 F.2d 1193, 1200 (8th Cir.1981). These courts have focused on the unique nature of military service in concluding that Title VII does not apply to uniformed military personnel. *See generally Chappell v. Wallace,* 462 U.S. 296, 300, 103 S.Ct. 2362, 2366, 76 L.Ed.2d 586 (1983).

The Ninth Circuit found an additional reason for the exception. It noted that Congress drew a distinction between the "military departments" (consisting of civilian employees) and the "armed forces" (consisting of uniformed military personnel). *Gonzalez,* 718 F.2d at 928 (citations omitted). Title VII refers to employees in "military departments." 42 U.S.C. § 2000e–16(a). Consequently, the court concluded that uniformed military personnel are not "employees" under Title VII. Accordingly, in light of these cases, the proper inquiry for the Court is to determine whether officers of the PHS are "employees."

■ There are several similarities between commissioned officers of the PHS and uniformed military personnel. For example, the ranks and titles of PHS officers correspond to those in the Army, and they are on the same pay scale. *Salazar,* 787 F.2d at 530. Also, like the branches of the military, the PHS is defined as a "uniformed service." 5 U.S.C. § 2101(3); *Scheppan v. United States,* 810 F.2d 461, 462 (4th Cir.1987) (citations omitted). There are, then, similarities between officers of the PHS and uniformed military.

The Court, however, finds these similarities superficial. For instance, while the ranking and wearing of a uniform bears resemblance to the military, the PHS officers are plainly not involved in military duty. *Milbert,* 830 F.2d at 358, n. 5. Judge Kaufman has highlighted important differences between the PHS and the uniformed military including:

(1) The PHS is not defined as one of the "armed forces." 10 U.S.C. § 101(4).

(2) The PHS is an agency of the Department of Health and Human Services. 42 U.S.C. § 202. Its purpose is simply to aid and improve the public health.

(3) Commissioned officers of the PHS are free to quit on their own unless the PHS has been declared a military service during national emergency or war.

(4) Officers of the PHS are not subject to the Code of Military Justice unless the President so declares pursuant to 42 U.S.C. § 217.

*Id.* at 358–59. Because of these differences, the Court finds that officers of the PHS are "employees" under Title VII.[5]

[5] The Defendants argue, however, that the legislative history makes clear that officers of the PHS may not maintain suits under Title VII. *Salazar,* 787 F.2d at 531–533. In *Salazar,* the Tenth Circuit focused on the remarks of Senator Harrison A. Williams, one of the authors of the Senate's bill, and concluded that Congress intended for Title VII to apply only to those in the competitive service. *Id.* Since officers of the PHS are excluded from the competitive service, 5 U.S.C. §§ 2101 *et seq.,* the court concluded that Title VII does not apply them. *Id.*

The Court finds this reasoning unpersuasive. Title VII applies to applicants or employees "in executive agencies (other than the General Accounting Office) as defined in section 105 of Title 5." 42 U.S.C. § 2000e–16(a). The PHS is a unit of the Department of HHS, an executive agency. 5 U.S.C. §§ 101, 105. "Title VII's coverage of executive agency employees is comprehensive, reaching excepted service as well as competitive service employees." *Kizas v. Webster,* 707 F.2d 524, 542, n. 95 (D.C.Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). To reach the conclusion urged by the Defendants, the Court would have to find that the legislative history trumps the text of the statute. The Court

---

**5.** The Court notes that the definition of "employee" in Title 5 apparently does not extend to Title VII. 5 U.S.C. § 2105.

declines to reach that extraordinary conclusion. *See Matter of Sinclair,* 870 F.2d 1340 (7th Cir.1989).

Furthermore, the legislative history of 42 U.S.C. § 2000e–16 is far from clear. *See Hill v. Berkman,* 635 F.Supp. 1228, 1234–36 (E.D.N.Y.1986) (citations omitted). For example, it contains broad statements emphasizing that "the time has come to bring an end to job discrimination, once and for all, [for] every citizen." *Id.* at 1234 (citations omitted). The legislative history simply does not compel the conclusion urged by the Defendants.[6]

■ For the foregoing reasons, the Court finds that the Plaintiff has stated a claim under Title VII.[7] However, the Defendants other than the head of the agency involved must be dismissed.[8] 42 U.S.C. § 2000e–16(c). Therefore, the Defendants other than Donna Shalala, in her capacity as Secretary of the Department of HHS, will be dismissed.

*B. Fifth Amendment and APA*

■ The remaining counts of the Complaint must be dismissed pursuant to Fed. R.Civ.P. 12(b)(6). Plaintiff's Fifth Amendment claim (Count I) arises from the same allegations that support her Title VII claim. Complaint at ¶¶ 30, 36. However, Title VII provides the exclusive remedy for claims of discrimination in federal employment. *Brown v. General Services Administration,* 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976); *Kizas,* 707 F.2d at 541–43. Therefore, Count I must be dismissed.

■ Similarly, Plaintiff's claim under the APA, Count II of the Complaint, must be dismissed. The APA is inapplicable in federal Title VII cases. *Weahkee v. Powell,* 532 F.2d 727, 729 (10th Cir.1976). Moreover, Count II incorporates the same allegations that support Plaintiff's Title VII claim.

Complaint at ¶¶ 32, 36. Thus, Count II must be dismissed. *Rochon v. F.B.I.,* 691 F.Supp. 1548, 1555–56 (D.D.C.1988) (citations omitted) (dismissing claims arising from same factual predicate as Title VII claim).

Accordingly, the Court will dismiss Counts I and II of the Complaint. The Defendants other than Donna Shalala will also be dismissed. A separate Order will issue.

*ORDER*

In accordance with the Memorandum Opinion, it is this 17th day of March 1995 ORDERED:

1. That the Defendants' Motion to Dismiss, BE, and the same hereby IS, GRANTED in part and DENIED in part.

a. That the Motion to Dismiss, BE, and the same hereby IS, GRANTED as to Counts I and II of the Complaint; and

b. That the Defendants except Donna Shalala, in her official capacity, BE, and the same hereby ARE, DISMISSED; and

c. That the Motion to Dismiss, BE, and the same hereby IS, DENIED as to Count III of the Complaint; and

2. That the clerk of the Court mail copies of the Memorandum Opinion and this Order to all counsel of record.

---

**6.** Justice Scalia argues that almost any interpretation of a statute can be supported with a quote from the legislative history. *See Conroy v. Aniskoff,* —— U.S. ——, —— – ——, 113 S.Ct. 1562, 1567–72, 123 L.Ed.2d 229 (1993) (Scalia, J., concurring).

**7.** Because the Court finds that the Plaintiff may pursue her Title VII claim, there is no question that sovereign immunity has been waived and

that the Court has jurisdiction. *See Salazar,* 787 F.2d at 529.

**8.** The Complaint names as Defendants: the Department of HHS, the United States of America, Donna Shalala, as Secretary of the Department of HHS, and Dr. Audrey F. Manley, as the acting Surgeon General.