**Larry ROWE, et al.**

v.

**UNITED STATES of America.**

**Civ. No. S 98–4019.**

United States District Court, D. Maryland.

March 2, 1999.

Jonathan Schochor, Schochor, Federico and Staton, Baltimore, Md, Christopher P. Kennedy, Schochor, Federico & Staton, Baltimore, Md, for Kim Rowe, plaintiff.

A. David Copperthite, Office of the U.S. Attorney, Baltimore, MD, Lynne A. Battaglia, U.S. Attorney, Baltimore, MD, for United States of America, defendant.

## MEMORANDUM OPINION

SMALKIN District Judge.

This is a medical malpractice claim brought against the United States under the Federal Tort Claims Act (FTCA), 28 U.S.C. section 2671 *et seq.*, by Master Chief Petty Officer Larry Rowe, USNR; there is also a consortium claim brought jointly by Larry Rowe and his wife, Kim. The alleged malpractice occurred at the National Naval Medical Center in Bethesda, Maryland, where Master Chief Rowe was treated surgically for the repair of a knee injury he incurred while playing volleyball during a lunch break while he was on annual active duty at the United States Naval Academy as a member of the United States Naval Reserve.

The knee injury was sustained in April, 1995. After it was determined that the injury was sustained "in the line of duty," Mr. Rowe was put on inactive reserve status for surgical repair of the knee, which was carried out in December, 1995. The plaintiffs contend that the treatment afforded Mr. Rowe was negligent and has left him disabled. The Government has moved to dismiss, on the ground that Mr. Rowe's injury arose "incident to service," and, thus, is barred by the so-called *Feres* doctrine, stated in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). The plaintiffs oppose dismissal, the issues have been adequately briefed, and no oral hearing is needed, as the law is completely settled on the dispositive issue. Local Rule 105.6, D.Md.

It remains well-settled, almost 50 years after *Feres*, that a service member

cannot recover for medical malpractice arising out of care given in a military hospital. The cases are both legion and unanimous in applying *Feres* to bar malpractice actions brought by service members—even inactive reservists—against the Government on account of care rendered in a military medical facility. See, *e.g., Jackson v. United States*, 110 F.3d 1484 (9th Cir.1997) and *Borden v. Veterans Administration*, 41 F.3d 763 (1st Cir. 1994).

■ The only question presented in this suit is whether the fact that Mr. Rowe was a reservist at the time he was injured and operated upon, either alone or in conjunction with the fact that the underlying injury itself was sustained during a lunch-break volleyball game, takes this case outside of *Feres*, as not being "incident to service." The answer is, as a matter of law, *no*.

The fact that Mr. Rowe was not on active duty while he was actually being operated upon is inconsequential in the application of the *Feres* doctrine's "incident to service" rule. *Jackson, supra.* In another case almost precisely congruent on its facts with this one, *Quintana v. United States*, 997 F.2d 711, 712 (10th Cir.1993), the court squarely held that the fact that the reservist was not on active duty when the alleged malpractice occurred did not take the case out of the preclusive orbit of the *Feres* doctrine. As the court pointed out in *Quintana*, the *Feres* doctrine was applicable because the service member was, indeed, only entitled to treatment at a military medical facility in the first place because of her status as a member—*qua* member—of the Armed Forces. (In *Quintana*, as here, the alleged malpractice occurred in a military hospital.) *Id.*

■ The plaintiffs' attempt to distinguish this case from *Quintana* and the legion of cases like it is unavailing. The plaintiffs make that attempt by claiming that the original injury sustained by Mr. Rowe was not incurred "incident to service." This argument fails for two separate reasons.

First, regardless of how the injury was sustained, it is the military nature of the *treatment* that governs the applicability of *Feres* to a malpractice action. *Quintana, supra.*

Second, and more to the present point, Mr. Rowe was on active reserve status for training when the injury was sustained. It is true that his knee was injured—later requiring the treatment that, plaintiffs claim, was performed negligently—during a "pick-up volley ball game" he participated in during a lunch break, but that fact is irrelevant to the outcome of this case. In a number of cases, similar injuries—not precisely "military" in nature—have been held to have been incurred "incident to service." *See e.g., Borden, supra* (*Feres* applied based on the nature of the treatment, not the injury—which was an "off duty" basketball injury to the knee).

In *Woodside v. United States*, 606 F.2d 134 (6th Cir.1979), the court applied a broad reading of "incident to service" to bar an action for injuries incurred when an Air Force Flying Club aircraft crashed, killing the plaintiff's decedent, a non-rated Air Force officer who was seeking an FAA commercial pilot's license totally unconnected with his military assignment. The decedent was being instructed by a civilian, in an aircraft with a civilian registration. In *Woodside*, numerous cases are collected that hold injuries to have been "incident to service" when not obviously military in nature, *e.g.*, injuries sustained while swimming in an on-base swimming pool, while riding a horse rented from a military stable, while riding a bus to a military-sponsored beach party, and while playing in a "donkey softball" game. *Woodside*, 606 F.2d at 141.

Mr. Rowe's situation is indistinguishable from that presented in *Woodside* and the cases collected in it, in that he was engaged in a leisure activity while on active duty for training, which is sufficient to render injuries arising therefrom "incident

to service." From time immemorial, the military has looked upon sport not only as a pleasant form of physical training, but also as a means for team-building, and even for teaching tactics and strategy. Indeed, one is reminded of the famous observation attributed to the great Iron Duke (Wellington): "The battle of Waterloo was won on the playing fields of Eton." There is, thus, no question that this case arises "incident to service."

In that Mr. Rowe has no viable malpractice claim, the plaintiffs' joint consortium claim, which is entirely dependent upon the existence of a valid underlying claim, must also be dismissed, under clear Fourth Circuit case law. *Minns v. United States,* 155 F.3d 445, 448 (4th Cir.1998).

Finally, plaintiffs urge that *Feres* should be overruled. If and when this case comes before the Supreme Court, that argument can be pressed, and perhaps it will fall on sympathetic ears. Given the rule of *stare decisis,* though, the ears of this Court and the Fourth Circuit must be deaf to any argument that *Feres* should be overruled. And, even if it could overrule *Feres,* this Court, for the sound reasons stated in *Feres* that still hold true some 50 years later—and that Congress has never seen fit to repudiate—would not do so.

For the reasons stated, an Order will be entered separately, dismissing this case with prejudice, for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6).

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is, this 2nd day of March, 1999, by the Court, ORDERED:

1. That the defendant's motion to dismiss BE, and it hereby IS, GRANTED;

2. That this case BE, and it hereby IS, DISMISSED, with prejudice, for lack of federal subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(6); and

3. That the Clerk of Court mail copies hereof and of the foregoing Memorandum Opinion to counsel for the parties.